1  **C&B LAW GROUP LLP**
2  Jack Bazerkanian, State Bar No. 299031
     *jack@cblawgroup.com*
3  2315 W. Burbank Blvd.
   Burbank, California 91506
4  Telephone: (213) 986-3430
5  Facsimile: (213) 986-9860

6  **LTL ATTORNEYS LLP**
7  Caleb Liang, State Bar No. 261920
     *caleb.liang@ltlattorneys.com*
8  Kevin B. Kelly, State Bar No. 274145
     *kevin.kelly@ltlattorneys.com*
9  300 S Grand Ave, Suite 3950
   Los Angeles, CA 90071
10 Telephone: (213) 612-8900
11 Facsimile: (213) 612-3773

12 *Attorneys for Plaintiffs*
13 *Arsen Gaboyan, Melania Gaboyan,*
   *Adam Sapunjian, George Sapunjian,*
14 *and Jack Sapunjian*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARSEN GABOYAN, an individual; MELANIA GABOYAN, an individual; ADAM SAPUNJIAN, an individual; GEORGE SAPUNJIAN, an individual; and JACK SAPUNJIAN, an individual,<br><br>　　　Plaintiffs,<br><br>v.<br><br>CITIBANK, N.A.; and DOES 1-10, inclusive,<br><br>　　　Defendants. | Case No.:<br><br>Class Action Complaint For:<br><br>1. Violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*<br>2. National Origin Discrimination in Violation of 42 U.S.C. § 1981<br>3. Violation of the Unruh Civil Rights Act, California Civil Code § 51, *et seq.*<br>4. Violation of the California Unfair Competition Law<br><br>Demand for Jury Trial |

1
**CLASS ACTION COMPLAINT**

Plaintiffs Arsen Gaboyan, Melania Gaboyan, Adam Sapunjian, George Sapunjian, and Jack Sapunjian (collectively, "Plaintiffs"), individually and as representatives of a class of all other similarly situated individuals in California, allege as follows:

## I. NATURE OF ACTION

1. Between 2015 and 2021, Defendant Citibank, N.A. ("Citi") engaged in a pattern and practice of discrimination against customers and/or potential customers based on their Armenian national origin. Citi applied extra scrutiny to those of Armenian national origin when they applied for, and/or sought to maintain, banking services such as credit cards, checking accounts, savings accounts, lines of credit, increases in credit amounts, etc. This often resulted in Citi declining these customers' applications for such services and/or closing financial/credit accounts that were previously opened and in good standing, despite offering these services to other similarly situated customers who were not Armenian. Citi also failed to provide true and accurate statements of the reasons it took these adverse actions against these Armenian customers.

2. Citi's adverse actions focused on Armenians with last names ending in "ian" or "yan" that lived in or around Glendale, California. Citi did so on the unfounded belief that Armenians were more likely to commit fraud and refuse to pay charges made on credit accounts, thereby treating them all as if they were criminals.

3. In fact, in November 2023, the United States Consumer Financial Protection Bureau ("CFPB") found that, during the period of 2015 to 2021, Citi purposefully discriminated against consumers of Armenian descent, primarily based on the spelling of their last name. Based on this finding, the CFPB and Citi entered into a consent order whereby Citi was obligated to pay $1.4 million to harmed consumers along with a $24.5 million penalty.

4. Plaintiffs and members of the putative Class (the "Class") have

suffered harm due to the discriminatory tactics employed by Citi to deny them financial services. Due to this conduct, Plaintiffs and members of the putative Class bring this Action under federal and state law against Citi for actual, statutory and/or punitive damages, injunctive relief, attorney's fees and costs, and any other relief this Court deems just and proper.

## II.  JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs assert a federal cause of action for violations of the Equal Credit Opportunity Act. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs are citizens of a different state than all defendants, the putative class size exceeds 100 members, and because the amount in controversy exceeds $5,000,000.

6. Personal jurisdiction is appropriate over Citi because it transacts business in the State of California, including in this District, and Plaintiffs' claims arise out of Citi's conduct in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

## III.  PARTIES

8. Plaintiff Arsen Gaboyan ("A. Gaboyan"), who is of Armenian national origin, is, and at all relevant times was, a natural person and a citizen of the State of California. Plaintiff A. Gaboyan lived in Glendale, California from 1988 until 2020, and has lived in Los Angeles, California since November 2020.

9. Plaintiff Melania Gaboyan ("M. Gaboyan"), who is of Armenian national origin, is, and at all relevant times was, a natural person and a citizen of the State of California. Plaintiff M. Gaboyan lived in Glendale, California from 2000 until 2020, and has lived in Los Angeles, California since November 2020.

10. Plaintiff Adam Sapunjian ("A. Sapunjian"), who is of Armenian

national origin, is, and at all relevant times was, a natural person and a citizen of the State of California. He has lived in Glendale, California since birth.

11. Plaintiff George Sapunjian ("G. Sapunjian"), who is of Armenian national origin, is, and at all relevant times was, a natural person and a citizen of the State of California. He has lived in Glendale, California since birth.

12. Plaintiff Jack Sapunjian ("J. Sapunjian"), who is of Armenian national origin, is, and at all relevant times was, a natural person and a citizen of the State of California. He has lived in Glendale, California since birth.

13. Defendant Citi is, and at all relevant times was, a global bank with assets of over $1 trillion. Citi provides a wide variety of financial products and services to its global and domestic clients, including, among others, credit cards, lines of credit, and personal and business checking accounts.

14. The true names and capacities of defendants Does 1 through 10, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiffs, who therefore sue said defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the defendants designated herein as a Doe defendant are in some manner responsible for the acts and occurrences set forth herein. Plaintiffs will ask leave of court to amend this Complaint to show the true names and capacities of defendants Doe 1 through 10, inclusive, as well as the manner in which each Doe defendant is responsible, when the same has been ascertained.

## IV. FACTUAL ALLEGATIONS

15. Citi is one of the country's largest banks by assets. It offers a wide variety of banking services, including credit cards, lines of credit, savings accounts, and checking accounts.

16. From at least 2015 through 2021, it was Citi's pattern or practice to apply extra scrutiny to, negatively assess, and often deny banking services to certain customers and/or potential customers based on their Armenian national

origin. Citi specifically focused on Armenians with last names ending in "ian" or "yan" that lived in or around Glendale, California. Citi did so on the unfounded belief that Armenians were more likely to commit fraud and refuse to pay charges made on credit accounts, thereby treating them all as if they were criminals.

**A. Consumer Financial Protection Bureau's Consent Order Against Citi**

17. Indeed, in November 2023, the CFPB found that, during the period of 2015 to 2021, Citi purposefully discriminated against consumers of Armenian descent, primarily based on the spelling of their last name. Based on this finding, the CFPB and Citi entered into a consent order whereby Citi was obligated to pay $1.4 million to harmed consumers along with a $24.5 million penalty.

18. The CFPB found that Citi's employees considered customers and/or potential customers with last names ending in "ian" or "yan," especially if their address was in or around Glendale, California, as presenting a high risk of fraud, including because they were perceived as likely to incur significant charges and then "bust out," meaning they would leave the country or otherwise not pay off the charges.

19. The CFPB further concluded that Citi's "supervisors and trainers instructed [Citi] employees to conceal their reliance in the credit decision on applicants' last names ending in "ian" or "yan" and addressed in or around Glendale, California, including by telling [Citi] employees not to discuss it in writing or on recorded phone lines."

20. The CFPB collected data from Citi and conducted a statistical regression analysis of that data from 2015 through 2021. It found that Citi denied credit applicants with a last name ending in "ian" or "yan" more often than other similarly situated applicants, especially if the applicant also had an address in or around Glendale, California.

21. The CFPB concluded that Citi "did not have a legitimate, non-discriminatory explanation for its pattern or practice of applying extra scrutiny to,

negatively assessing, and often denying" credit applications from applicants with last names ending in "ian" or "yan" and/or with an address that was in or around Glendale, California.

22. Moreover, the CFPB also found that, when Citi denied credit to a customer based on their Armenian national origin, Citi failed to inform that individual accurately and adequately of the reason for the action in the adverse action notice.

**B. The Plaintiffs And The Adverse Actions Citi Took Against Them**

23. Plaintiffs are current and/or former customers of Citi and, as described below, they were damaged by Citi's discriminatory practices in that they were denied credit, subjected to extra scrutiny and/or unilateral unfavorable changes to their accounts, including freezing or putting a hold/block on such accounts, denied requested credit increases, referred to Citi's fraud prevention unit for additional scrutiny and adverse action, and/or had their accounts terminated. Moreover, Citi failed to inform Plaintiffs accurately and adequately of the reason for the adverse actions taken against them.

**C. Citi's Specific Adverse Actions Against Plaintiffs Arsen And Melania Gaboyan**

24. Plaintiff M. Gaboyan has lived in Los Angeles, California since November 2020, and lived in Glendale, California from 2000 until 2020. Plaintiff A. Gaboyan has lived in Los Angeles, California since November 2020, and lived in Glendale, California from 1988 until 2020. Both are of Armenian national origin. Plaintiff M. Gaboyan is a Management Analyst for Los Angeles County, and has been employed there since 2013. Plaintiff A. Gaboyan is a manager at CalPrivate Bank, and has been employed in the banking industry since 2008. Both Plaintiffs M. Gaboyan and A. Gaboyan have always had excellent credit histories and ratings.

25. In around early 2020, Plaintiff M. Gaboyan began shopping at Costco

and applied for a Costco Anywhere Visa credit card offered by Citi. She planned to continue shopping at Costco regularly, and decided to apply for the credit card because it offered a cashback rewards program on purchases at Costco.

26. However, in around April 2020, Citi denied Plaintiff M. Gaboyan's credit card application. Citi provided no explanation.

27. Plaintiff M. Gaboyan's credit history has always been strong, and her credit score has always been rated excellent. Around that time, she also had other non-Citi credit cards with high spending limits in the tens of thousands of dollars. She always paid her credit card bills in full and on time. Also, several months later, in large part due to her and Plaintiff S. Gaboyan's excellent credit ratings, they were approved for a substantial mortgage loan at a competitive interest rate, which they used to purchase their first home in Los Angeles.

28. Despite being denied the credit card, Plaintiff M. Gaboyan continued to regularly shop at Costco, without cash back rewards she would have been entitled to had her credit card application not be denied.

29. In around May of 2020, Plaintiffs M. Gaboyan and A. Gaboyan also opened a joint checking account with Citi. Approximately one week later, Citi froze their joint account. Plaintiff M. Gaboyan visited a Citi branch office to inquire about the freezing of their account. The Citi employee he met with was unable to provide any explanation. Plaintiff M. Gaboyan was forced to liquidate their account.

30. Despite their inquiries and diligent investigation, Plaintiffs M. Gaboyan and A. Gaboyan could not have reasonably discovered that Citi's actions were taken because they are of Armenian national origin. However, they learned of the CFPB's findings and the consent order in November 2023, and are now informed and believe that Citi denied M. Gaboyan's application because she is of Armenian national origin. Plaintiffs M. Gaboyan and A. Gaboyan are also now informed and believe that Citi froze their accounts and forced them to liquidate

7
**CLASS ACTION COMPLAINT**

their funds because they are of Armenian national origin.

**D. Citi's Specific Adverse Actions Against The Sapunjian Family**

31. Plaintiffs J. Sapunjian, A. Sapunjian, and G. Sapunjian are three brothers who have all lived in Glendale, California since birth. They are of Armenian national origin. Together, they are third-generation owners and operators of a successful auto collision repair business, Infra-Red Auto Bake Painting Co., dba AGC Collision Center, which was established in Los Angeles nearly 75 years ago. Plaintiffs J. Sapunjian, A. Sapunjian, and G. Sapunjian have always had excellent credit histories and ratings.

32. On November 1, 2018, without any prior notice or warning, Plaintiffs J. Sapunjian, A. Sapunjian, and G. Sapunjian received a letter from Citi notifying them that their business checking account with Citi would be closed within 30 days.

33. By November 2018, they had maintained this checking account for approximately four years. During that time, they conducted substantially all of their business transactions with this account. Most of their customers were major insurance companies. They had never overdrawn this checking account. Many of their bills were automatically paid through this account. They processed payroll through this account.

34. After receiving the letter, Plaintiff J. Sapunjian visited a Citi branch office to inquire about the account closure. The branch manager made several phone calls and was unable to provide a clear answer. However, the manager did confirm there was no suspicious activity detected.

35. The account closure caused substantial disruption for the brothers and their business, requiring for example the transfer of funds, changes to payroll, changes to the autopayment of bills, and other problems.

36. Shortly after their checking account was closed, in December 2018, all three brothers had all of their individual Citi credit card accounts closed. Each

had various Citi credit cards, including from Costco, Macy's, Bloomingdale's, Best Buy, and Home Depot. Their credit reports indicate that the accounts were "canceled by credit grantor."

37.     The brothers inquired with Citi as to their credit card account closures, but were not provided with an explanation. Their credit histories have always been strong, and their credit scores have always been rated excellent. Around that time, they also had other non-Citi credit cards with high spending limits in the tens of thousands of dollars. They always paid their credit card bills in full and on time.

38.     Despite their inquiries and diligent investigation, Plaintiffs J. Sapunjian, A. Sapunjian, and G. Sapunjian could not have reasonably discovered that Citi's actions were taken because they are of Armenian national origin. However, they learned of the CFPB's findings and the consent order in November 2023, and are now informed and believe that Citi closed all of their Citi accounts because they are of Armenian national origin.

## V.  CLASS ALLEGATIONS

39.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek certification of a class of all California residents of Armenian national origin who, during the period of January 1, 2015 to the present ("Class Period"), applied for, and/or sought to maintain, banking services such as credit cards, checking accounts, savings accounts, lines of credit, and increases in credit amounts, and had adverse action(s) taken against them by Citi, including applying extra scrutiny to, negatively assessing, and/or denying these individuals' applications for such services and/or closing financial/credit accounts, based on their Armenian national origin (the "Class").

40.     Plaintiffs reserve the right to change or modify the class definition, or create additional subclasses, based upon facts discovered during this action and/or any other subsequent changes.

41.     Excluded from the Class are Citi, its subsidiaries, affiliates, officers,

directors, and employees.

42. **Numerosity and Ascertainability.** The members of the Class are so numerous that individual joinder of all Class members is impracticable. Plaintiffs are informed and believe - based upon the publicly available information discussed herein - that there are tens of thousands of Class members, making joinder impracticable. Those individuals' identities are available through Citi's records, and Class members may be notified of the pendency of this Action by recognized, Court-approved notice dissemination methods.

43. **Commonality and Predominance.** Citi has acted in a manner generally applicable to Plaintiffs and the other members of the proposed Class. There is a well-defined community of interest in the questions of law and fact involved, which affect all Class members. The questions of law and fact common to the Classes predominate over the questions that may affect individual Class members, including whether Citi systematically discriminated against Class members based upon their Armenian national origin by taking adverse actions against their credit and/or bank accounts. Class action status is warranted under Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members. The interests of the members of the Class in individually controlling the prosecution of separate actions are theoretical and do not outweigh the benefits of this class action, which makes prosecuting this as a class action superior to individual lawsuits. Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation that would potentially preclude this action from proceeding on a class basis.

44. **Typicality.** Plaintiffs' claims are typical of other Class members' claims because Plaintiffs and Class members were subjected to the same allegedly unlawful conduct and damaged in the same way.

45. **Adequacy of Representation.** Plaintiffs are adequate class

representatives because their interests do not conflict with the interests of Class members whom they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this Action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

46. **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Citi, so it would be impracticable for Plaintiffs and Class members to individually seek redress for Citi's wrongful conduct.

47. **Declaratory and Injunctive Relief.** The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Citi. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Citi has acted and/or refused to act on grounds generally applicable to the Class, making final, public injunctive relief or corresponding declaratory relief appropriate.

48. Injunctive relief, and specifically public injunctive relief, is necessary in this Action forcing Citi to cease and desist its discriminatory practices.

# FIRST CAUSE OF ACTION

**VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT, 15 U.S.C. § 16901, *ET SEQ.***

**(Plaintiffs Melania Gaboyan, Adam Sapunjian, George Sapunjian, and Jack Sapunjian Against All Defendants)**

49. Plaintiffs, on behalf of themselves and all those similarly situated, reallege each and every paragraph above and incorporate them by reference as though fully stated herein.

50. The Equal Credit Opportunity Act ("ECOA") makes it unlawful for a creditor to discriminate against any applicant with respect to any aspect of a credit transaction on the basis of any protected characteristic, including national origin.

51. The term "applicant" means any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit.

52. Citi is a creditor under the ECOA because it regularly extends, renews, and continues issuances of credit.

53. Plaintiffs and Class members are applicants under the ECOA because they applied to Citi for the extension, renewal, or continuation of credit, as detailed above.

54. Plaintiffs and Class members are members of a protected class based on their Armenian national origin.

55. Citi took adverse credit actions against Plaintiffs and Class members by, *inter alia*, denying their applications for credit, subjecting them to extra scrutiny and/or unilateral unfavorable changes to their accounts, including freezing or putting a hold/block on such accounts, denying requested credit increases, referring them to Citi's fraud prevention unit for additional scrutiny and adverse action, and/or terminating their existing accounts. Moreover, Citi failed to inform

1 Plaintiffs accurately and adequately of the reason for the adverse actions taken
2 against them.
3    56.   On information and belief, Citi intentionally took these adverse credit
4 actions against Plaintiffs and the Class members because of their Armenian
5 national origin.
6    57.   Plaintiffs and all those similarly situated were harmed by Defendants'
7 conduct.
8    58.   On behalf of themselves and the Class they seek to represent,
9 Plaintiffs request the relief set forth below.

## SECOND CAUSE OF ACTION

## NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

**(All Plaintiffs Against All Defendants)**

14    59.   Plaintiffs, on behalf of themselves and all those similarly situated,
15 reallege each and every paragraph above and incorporate them by reference as
16 though fully stated herein.
17    60.   Pursuant to 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of
18 the United States shall have the same right in every State and Territory to make
19 and enforce contracts, to sue, be parties, give evidence, and to the full and equal
20 benefit of all laws and proceedings for the security of persons and property as is
21 enjoyed by white citizens, and shall be subject to like punishment, pains, penalties,
22 taxes, licenses, and exactions of every kind, and to no other." The term "'make and
23 enforce contracts' includes the making, performance, modification, and
24 termination of contracts, and the enjoyment of all benefits, privileges, terms, and
25 conditions of the contractual relationship." "The rights protected by this section are
26 protected against impairment by nongovernmental discrimination and impairment
27 under color of State law."
28    61.   Plaintiffs and Class members are members of a protected class based

on their Armenian national origin.

62. During the relevant period of time, Plaintiffs and Class members attempted to contract with Citi for extension, renewal, or continuation of credit and/or other financial services, as detailed above, but Citi denied them the right to contract for such services while offering them to other similarly situated persons not of Armenian origin.

63. On information and belief, Citi intentionally took these adverse actions against Plaintiffs and the Class members because of their Armenian national origin.

64. Plaintiffs and all those similarly situated were harmed by Citi's conduct.

65. On behalf of themselves and the Class they seek to represent, Plaintiffs request the relief set forth below.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51

**(All Plaintiffs Against All Defendants)**

66. Plaintiffs, on behalf of themselves and all those similarly situated, reallege each and every paragraph above and incorporate them by reference as though fully stated herein.

67. The Unruh Civil Rights Act states that "all persons" within California "are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

68. Citi is a "business establishment" for purposes of the Unruh Civil Rights Act because it operates its business in California, has several fixed locations

here, and generates revenue here.

69. Citi, as detailed above, denied Plaintiffs and other putative Class members full and equal treatment under the Unruh Civil Rights Act when it refused to offer them, and/or rescinded previous offers of, credit and/or other financial services on the same terms as individuals who were not of Armenian national origin, as provided in more detail above.

70. Plaintiffs and other Class members were harmed by Citi's refusal to transact business with them because their applications for credit cards and/or lines of credit were denied, or because previously approved credit cards/lines of credits/other financial accounts were rescinded and cancelled.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200, *ET SEQ.*

**(All Plaintiffs Against All Defendants)**

71. Plaintiffs, on behalf of themselves and all those similarly situated, reallege each and every paragraph above and incorporate them by reference as though fully stated herein.

72. The California Unfair Competition Law ("UCL") forbids "unlawful, unfair or fraudulent" conduct in connection with business activity.

73. Citi's business offering credit cards, lines of credit, and other financial services such as deposit accounts is a business activity under the UCL.

74. Plaintiffs and others Class members are "persons" under the UCL.

75. Citi's conduct described herein constitutes unlawful competition, as in the course of engaging in the business acts described above, it engaged in conduct that constituted a predicate violation of the laws identified herein, namely the Equal Credit Opportunity Act, the Fair Housing Act, 42 U.S.C. § 1981, and the Unruh Civil Rights Act.

76. Citi's conduct described herein constitutes unfair competition under the UCL, as their practices are likely to deceive the public by informing the public of an alleged commitment to diversity and equality, but instead using hidden business practices designed to deny and refuse financial services to Armenian Americans. As there is no legitimate justification for these practices, Citi's practices are unfair as defined under the UCL.

77. Citi's conduct described herein constitutes fraudulent competition under the UCL, as it uses hidden business practices designed to deny and refuse financial services to Armenian Americans. These business practices are likely to deceive the public, and thus are fraudulent.

78. Plaintiffs and the putative Class members were injured by Citi's refusal to transact business with them because their applications were denied, and/or their previously approved credit cards/lines of credits/deposit accounts were rescinded and closed.

79. The gravity of the harm suffered by Plaintiffs and Class members resulting from Citi's conduct alleged herein outweighs any legitimate justification, motive or reason for the discrimination described. Accordingly, Citi's actions are immoral, unethical, unscrupulous and offend the established public policies as set out in state and federal regulations and are substantially injurious to Plaintiffs and other Class members.

80. As a result of Citi's above unlawful and unfair practices, Plaintiffs and members of the putative Class, and as appropriate on behalf of the general public, seek all allowable damages under the UCL including injunctive relief ordering Citi to transact in a timely manner.

**PRAYER FOR RELIEF**

81. WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

    a. Certify this case as a class action;

b. Appoint Plaintiffs as Class Representatives and designate Plaintiffs' counsel of record as Class Counsel;

c. Declare that Citi's policies and practices are unlawful and violate the Equal Credit Opportunity Act, 42 U.S.C. § 1981, and the California Unruh Civil Rights Act, and were in violation of California's UCL;

d. Award Plaintiffs and all others similarly situated actual, statutory, and punitive damages;

e. Award Plaintiffs and all others similarly situated prejudgment interest and attorneys' fees, costs and disbursements, as provided by law;

f. Award Plaintiffs and all others similarly situated injunctive and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiffs and all others similarly situated; and

g. Award Plaintiffs and all others similarly situated such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and the putative Class members hereby demand trial by jury of all issues triable as of right by jury.

**C&B LAW GROUP LLP**

Dated: December 1, 2023  /s/ *Jack Bazerkanian*
Jack Bazerkanian
*Attorneys for Plaintiffs and the Putative Class*

**LTL ATTORNEYS LLP**

Dated: December 1, 2023  /s/ *Caleb H. Liang*
Caleb H. Liang
Kevin B. Kelly
*Attorneys for Plaintiffs and the Putative Class*